1
2
3
4
5
6
7
8
9
10
11
12

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

13

14

15

16

17

18

| | |
|---|---|
| MALCOLM ANDRE YOUNG, | CV F 02 5003 REC SMS P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS REGARDING MOTIONS FOR SUMMARY JUDGMENT (Docs. 75, 78, 86, 89) |
| DANIELSON, et. al., | |
| Defendants. | |
| _____/ | |

19      Malcolm Andre Young  ("Plaintiff") is a state prisoner proceeding pro se and in forma

20    pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.

21    **A.  RELEVANT PROCEDURAL HISTORY**

22      Plaintiff filed the instant action on January 2, 2002.   Plaintiff filed an Amended

23    Complaint on February 13, 2002.  On October 17, 2002, the Court dismissed the Amended

24    Complaint with leave to amend.  Plaintiff informed the Court on November 4, 2002, that he

25    wished to proceed on his Amended Complaint and wished to dismiss Defendant Danielson from

26    the action.   The Court issued Findings and Recommendations on November 13, 2002, to dismiss

27    Defendant Danielson from the action and proceed on the Amended Complaint with the Eighth

28

Amendment claim against Defendants Hutton, Sledge,[1] (hereinafter "Doser"), Moor, Walters and Ortiz. In a separate Order, the Court ordered service of the Amended Complaint. The District Court adopted the Findings and Recommendations on February 4, 2003.

On March 7, 2003, Defendants filed a Motion to Dismiss. The Court issued Findings and Recommendations on July 31, 2003, that the Motion to Dismiss be denied. The District Court adopted the Recommendations on September 30, 2003, and denied the Motion to Dismiss.

On May 28, 2004, the Court issued a Discovery and Scheduling Order. A Second Scheduling Order was issued on February 16, 2005, setting the matter for a Telephonic Trial Confirmation Hearing on August 16, 2005, and trial on September 27, 2005. In the Pretrial Statement filed by Defendants, Defendants indicated that they would seek leave to file a Motion for Summary Judgment or Motion to Dismiss on statute of limitations grounds. On July 15, 2005, the Court requested briefing as to why Defendants should be relieved from the Scheduling Order under Rule 16 of the Federal Rules of Civil Procedure. The Court granted Defendants request on August 4, 2005, and set a new dispositive motion deadline.

Defendants Ruby Doser and Walters filed separate Motions for Summary Judgment on August 29, 2005. (Doc. 76, 78.) On August 31, 2005, Defendant Hutton filed a Motion for Summary Judgment. (Doc. 82.) On September 1, 2005, Defendant Ortiz filed a Motion for Summary Judgment. (Doc. 86.) Defendant John Moor filed a Motion for Summary Judgment on September 2, 2005. (Doc. 89.)

Plaintiff filed Oppositions to the Motions for Summary Judgment on September 19, 2005 (Doser); September 22, 2005, (Moor and Ortiz); and September 28, 2005 (Am. Opposition to Defendant Moor's Motion). Plaintiff filed a Statement of Non-Opposition to Defendant Hutton's Motion for Summary Judgment on September 28, 2005.

Defendants filed a Reply to the Opposition on September 30, 2005 (Walters and Doser) and October 5, 2005 (Ortiz). Defendants also filed corresponding Objections to the Evidence offered by Plaintiff in his Oppositions.

---

[1]Plaintiff refers to Defendant Doser by her maiden name "Sledge" in the Amended Complaint.

On November 2, 2005, the District Court issued an Order granting the Motion for Summary Judgment against Defendant Hutton based on Plaintiff's Statement of Non-Opposition. (Doc. 116.)

**B. SUMMARY OF AMENDED COMPLAINT**

In the Amended Complaint, Plaintiff alleges he was denied adequate medical treatment by different individuals at California Correctional Institution in Tehachapi, California. Plaintiff names Dr. J.W. Moor, M. Ortiz, Ruby Doser and Robert Walters as Defendants. Plaintiff is seeking compensatory damages in the amount of $1,500,000.00, punitive damages in the amount of $1,500,000.00, special damages according to proof, costs of this action, and any additional relief as the court deems just and proper.

**Defendant Dr. J.W. Moor**

According to the Amended Complaint, Plaintiff states that he was shot on January 24, 1992. On July 11, 1996, Plaintiff was feverish and the abdominal wound was swelling. Plaintiff alleges that the "swelling had started to pus, he felt feverish and had been sweating." (Am. Compl. at 8.) Plaintiff alleges that Defendant Dr. Moor told him that he "would be ducatted [sic] when the medical clinic received sterol [sic] instruments." Id. at 8. Plaintiff alleges that he had to wait for five days with his abdomen in severe pain because Defendant Moor failed to prescribe any medication for his pain. Plaintiff alleges that Defendant Moor failed to treat him despite knowledge of his serious medical condition. Id.

On July 16, 1996, Defendant Moor performed surgery to remove the sutures from the 1992 surgery. Plaintiff states that he was wide awake during the suture removal, and Defendant Moor did not numb the abdominal muscle or give plaintiff medication to sedate him. Plaintiff states he experienced severe pain during the surgery. Plaintiff alleges Defendant Moor was deliberately indifferent to his serious medical needs.

Plaintiff alleges that on March 24, 1997, he sought medical attention for abdominal pain and was first seen by MTA D. Lile and then Defendant Moor. Plaintiff states that Defendant Moor found Plaintiff's abdominal muscle to be tender but Defendant would not remove the remaining sutures until they became infected and that Plaintiff would have to live with the pain.

1    Plaintiff alleges that on August 26, 1997, he again sought medical treatment for

2   abdominal pain and was again first seen by MTA D. Lile and then by Defendant Dr. Moor.

3   Plaintiff alleges that Defendant Moor examined his abdominal area where the suture removal

4   surgery was performed and told Plaintiff that "the infected suture had already been removed and

5   that there was no problem at Plaintiff's colstomy [sic] site." (Am. Compl. at 12.)

6    On October 27, 1997, Plaintiff states he again sought medical attention for the abdominal

7   pain.  Plaintiff was first examined by MTA K. Johnson and then Defendant Moor.    Plaintiff

8   alleges that Defendant Moor did nothing, ignored his complaints, told him that he would not do

9   anything about the sutures until they became infected and Plaintiff would have to deal with the

10   pain.

11    On April 17, 1998, Plaintiff states he was again examined by Defendant Moor.  Plaintiff

12   states that Defendant Moor found a small lump in his lateral scar area and that it was tender.

13   Defendant Dr. Moor said he would not do anything about the sutures until they became infected

14   and until then, Plaintiff would have to deal with the pain.

15    Plaintiff states he was again examined by Defendant Moor on August 14, 1998.  Plaintiff

16   alleges he informed Defendant Moor that he felt the sutures were becoming infected and that he

17   wanted the remaining sutures removed.   However, Defendant Moor informed Plaintiff that all

18   the sutures had been removed and that there was no infection.  The same incident occurred on

19   March 18, 1999, when Plaintiff was again examined by Defendant Moor.

20    Plaintiff states he was diagnosed with diabetes on May 31, 1999.  Plaintiff states he was

21   taken to the medical clinic on June 29, 1999, for swelling on the left side of his abdomen.

22   Plaintiff was examined by Dr. Hurst who x-rayed Plaintiff for possible hernia caused by the scar;

23   however, the x-rays were negative for a hernia. (Am. Compl. at 15.)  Dr. Hurst prescribed a three

24   day lay-in.

25    Plaintiff states he was examined by Dr. Liebman on June 30, 1999, and found Plaintiff

26   "had an infection" and prescribed an antibiotic.  Plaintiff was transferred to Calipatria State

27   Prison on July 28, 1999.  On November 24, 1999, Plaintiff went to the clinic and was diagnosed

28   as having "Spigelian Hernia and Granulated [S]utures."  Plaintiff states he was taken to a hospital

in San Diego where doctors found he had a "herniation of the lateral portion of the colostomy [sic] wound, which was overlaid by subcutaneous inflammatory tissue consisting of suture granuloma." Id.

### Defendant Manuel Ortiz, Medical Technical Assistant ("MTA")

Plaintiff alleges that on July 31, 1996, he went to sick call complaining of abdominal and head pain. Plaintiff was seen by Defendant Ortiz but was not seen by a doctor and was not given a ducat for follow up with a doctor. Based on this, Plaintiff alleges that Defendant Ortiz failed to provide him adequate medical care and treatment given the knowledge of Plaintiff's serious medical condition. (Am. Compl. at 9.)

### Defendant Robert Walters, Correctional Officer

Plaintiff alleges that on August 8, 1996, he submitted an inmate grievance where he wrote that "[o]n or about August 1, 1996, at approximately 3:45 p.m., I had become extremely sick, my Celly told the tower guard, C/O Walters, he had a man down. Walters told him to tell the Floor Officers during count." (Am. Compl. at 9.) Plaintiff alleges that Defendant Walters was deliberately indifferent to him.

### Defendant Ruby Doser, Correctional Officer

Plaintiff alleges that on August 8, 1996, in a 602 appeal, Plaintiff wrote that his cellmate informed Correctional Officer Doser on August 1, 1996, that Plaintiff was extremely sick and needed medical attention. Specifically, Plaintiff states "he informed Floor Officer C/O Doser that I was extremely sick (I was laying on the floor at this time) she said she was calling the MTA, two counts went by 7:00 p.m. and 9:00 p.m. counts. She was informed both times I needed medical attention. Defendant said she would call her supervisor and try to get the MTA over as soon as possible. There is no excuse for a four and a half, five hour delay for emergency medical help." Plaintiff alleges that Defendant Doser was deliberately indifferent to his serious medical needs. (Am. Compl. at 9.)

## C. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a Summary Judgment Motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not

establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

Matsushita, 475 U.S. at 587 (*quoting* Fed. R. Civ. P. 56(e) advisory committee's note on 1963

amendments).

        In resolving the Motion for Summary Judgment, the Court examines the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any.  Rule 56(c).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at

255, and all reasonable inferences that may be drawn from the facts placed before the court must

be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (*citing* United States v.

Diebold, Inc., 369 U.S. 654, 655 (1962)(*per curiam*).  Nevertheless, inferences are not drawn out

of the air, and it is the opposing party's obligation to produce a factual predicate from which the

inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D.

Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

        Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

show that there is some metaphysical doubt as to the material facts.  Where the record taken as a

whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine

issue for trial.'"  Matsushita, 475 U.S. at 587 (*citation omitted*).

## D.  EVIDENTIARY OBJECTIONS

        Before the Court can determine the undisputed facts of the case, the Court must first

resolve Defendant's many evidentiary objections to Plaintiff's Exhibits and Declarations.

### Defendant Dr. J.W. Moor

        Defendant has lodged numerous objections to Exhibits of Plaintiff's Statement of

Undisputed Facts and portions of his Declaration.

        Exhibit 1 - Defendant objects on the grounds of relevance, foundation, authentication and

hearsay.  Relevant evidence is "evidence having any tendency to make the existence of any fact

that is of consequence to the determination of the action more probable or less probable than it

would be without the evidence." Fed.R.Evid. 401.   Exhibit 1 provided by Plaintiff describes

Plaintiff's Colostomy closure on June 28, 1994.   As the document predates the events at issue in

this case and does not concern any treatment or lack thereof by Defendant Dr. Moor,   the

document is irrelevant and, therefore, inadmissible.   Fed.R.Evid. 402.

Exhibit 2 - This Exhibit appears to be handwritten notes.   Defendant objects on the

grounds of foundation, authentication, and hearsay in addition to the fact that the document is

largely illegible.

To meet this requirement, documents "are required to be authenticated by affidavits or

declarations of persons with personal knowledge through whom they could be introduced at

trial." Zoslaw v. MCA Distributing Corp., 693 F.3d 870, 883 (9th Cir. 1982).   This means that

the proponent of the document must present sufficient evidence to support a finding that the

document is what Plaintiff claims it is.   Fed.R.Evid. 901.   Although these notes appear to be

entries into a medical record, Plaintiff does not indicate in his Opposition, Declaration or

Statement of Undisputed Facts, what the document is and therefore, the document is not

authenticated.   Rule 901 of the Federal Rules of Evidence requires that documentary evidence be

authenticated.

The Court views Defendant's objection to the authenticity of Plaintiff's medical records

with disfavor.   The records were clearly compiled on California Department of Corrections forms

and bear Plaintiff's name and CDC identification number.   In light of the thousands of medical

records that have been submitted to the Court over the years, generally by the Attorney General's

Office, the Court finds it difficult to believe that Defendant seriously questions the authenticity of

these records.   As Plaintiff has failed to properly authenticate the document, Defendant's

Objection is valid and therefore, Exhibit 2 is inadmissible.   Fed.R.Evid. 901.

Exhibit 3 - This Exhibit also appears to be handwritten entries into a medical record.

Defendant objects to this Exhibit on the same grounds as those made with respect to Exhibit 2.

As in the case above, Plaintiff has failed to authenticate the document and therefore, it is

inadmissible.   Fed.R.Evid. 901.

Exhibit 4 - Consent for Surgical Operation.   Defendant objects on the same basis as the

1   above.  The Court finds the document irrelevant as whether Plaintiff consented to the surgical

2   does not make more or less probable that Defendant Moor was deliberately indifferent to a

3   serious medical need.  Accordingly, the document is inadmissible on both relevancy and

4   authentication grounds. Fed.R.Evid. 402, 901.

5       Exhibit 5 - Declaration of Charles Clark.  Defendant objects to the Declaration on the

6   grounds that it is irrelevant.   In this case, Mr. Clark's declaration provides that on July 16, 1996,

7   Plaintiff entered the facility for a surgery.  Later, Mr. Clark heard Plaintiff screaming and he ran

8   to see what was happening.  He saw Plaintiff being held by MTA Ortiz and asking to be "put" to

9   sleep because of the pain.  (Clark Decl. at 2.)  Defendants argue that the Declaration is irrelevant

10  because Mr. Clark did not observe the entire procedure.  The Court is inclined to agree.  It is

11  unclear from the Declaration when during the surgical procedure Mr. Clark observed Plaintiff in

12  pain.  Given the admissible evidence that Defendant Moor administered two injections of

13  anesthetic (Moor Decl. at ¶3c; Ortiz Decl. at ¶4), the Declaration is vague and does not make

14  more probable the fact that Defendant Dr. Moor acted with deliberate indifference to a serious

15  risk to Plaintiff's health.   Accordingly, the Declaration is inadmissible.  Fed.R.Evid. 402.

16      Exhibits 6-9, 11-14, 18,  - These Exhibits also appear to be excerpts from Plaintiff's

17  medical records.  Defendant advances the same objections as those made concerning Exhibits 2

18  and 3.  As Plaintiff has failed to authenticate these documents, they are inadmissible and will not

19  be considered by the Court.  Fed.R.Evid. 901.

20      Exhibits 10, 15 - Defendant objects to these documents on the grounds that they are

21  irrelevant, have not been authenticated, lack foundation and constitute hearsay.  Exhibit 10

22  appears to be a letter to Appeals Coordinator Padilla regarding an inmate appeal.  Plaintiff does

23  not indicate why this document is relevant to the resolution of the Eighth Amendment claim in

24  this case.  Plaintiff merely cites to the document following reference to Dr. Moor's finding that

25  Plaintiff had a tender spot in the scar area.  The Court finds the documents inadmissible.

26  Fed.R.Evid. 402.

27      Exhibits 15 is a copy of an Inmate/Parolee Appeal Screening Form.  Similarly, Plaintiff

28  does not indicate how or why this document is relevant to his Eighth Amendment Claim.  The

1   Court finds the document inadmissible.  Fed.R.Evid. 402.

2          Exhibits 19 and 20 are photocopies of various inmate/parolee appeal forms.  Plaintiff

3   again fails to indicate why and how these documents are relevant to the resolution of the claims

4   at issue in the case.  Moreover, the Court fails to see how any of the above appeals aid in the

5   resolution of whether Defendant Dr. Moor was deliberately indifferent to his serious medical

6   needs.  Accordingly, the Court finds the above referenced Exhibits irrelevant and therefore,

7   inadmissible.[2]  Fed.R.Evid. 402.

8          Exhibit 16 - appears to be a copy of a prescription for medications perhaps taken out of

9   Plaintiff's medical file.  However, as noted by Defendants, Plaintiff has failed to authenticate the

10  document and thus, the Court is unaware of the nature of the document.  As such, it is

11  inadmissible under Federal Rule of Evidence 901.

12         Exhibit 17 appears to be a copy of a typed prescription.  Defendant objects to the copy as

13  irrelevant, lacking in foundation and proper authentication and as hearsay.  From the Opposition,

14  it appears Plaintiff is citing to this Exhibit to support the fact that he had an infection. Opposition

15  at 8, ¶ L.  While Plaintiff may have incurred an infection at some later date, Plaintiff does not

16  explain how this is relevant to whether or not Defendant Moor knew of and disregarded a serious

17  risk to his health.  Even assuming the prescription is relevant, Plaintiff has failed to authenticate

18  the document and it is therefore, inadmissible under Rule 901.

19         Exhibits 21 and 22 - concerns a surgery occurring in February of 2000.  Plaintiff merely

20  cites to these documents in his recitation of the facts.  However, as noted by Defendants, the

21  surgery referenced occurred some years after the events at issue in this action and was performed

22  by a physician other than Dr. Moor.   Moreover, Plaintiff has failed to authenticate the document.

23  Accordingly, it is inadmissible under Rules 402 and 901 of the Federal Rules of Evidence.

24         Defendant objects to portions of Plaintiff's declaration in Opposition to Defendant

25  Moor's Motion for Summary Judgment on the basis that Plaintiff is not qualified to offer a

26  medical opinion regarding his condition, diagnosis, prognosis, treatment or whether a

27

28         [2]The Court notes further that may of the documents comprising Exhibit 10 consist of various medical record excerpts which also have not been authenticated by Plaintiff.  Fed.R.Evid.901.

1  Defendant's actions were taken in conformance with the appropriate standard of care.

2      As a rule, Declarations must be based on personal knowledge, state facts as would be

3  admissible in evidence (evidentiary facts, not conclusions) and show affirmatively that the affiant

4  is competent to testify to the matters stated therein.  Fed.R.Civ.P. 56.  In this case, Plaintiff

5  makes conclusory statements on issues concerning his condition, diagnosis, prognosis, treatment

6  and the applicable standard of care, all matters on which Plaintiff, who is not a medical expert, is

7  not qualified to testify.  Further, Plaintiff's conclusory statements that Dr. Moor failed to treat

8  him or provide adequate care will not be considered by the Court.  Such statements are not

9  evidentiary facts but conclusions which have yet to be proved.

10      **Defendant Manuel Ortiz, MTA**

11      Exhibits 1, 2, 4 - Medical Records.  Defendants object to these exhibits on the grounds

12  that Plaintiff has failed to authenticate these documents.  The Court finds Defendants Objection

13  valid as there is no authentication made by Plaintiff.  Accordingly, these exhibits are

14  inadmissible.  Fed.R.Evid. 901.

15      Exhibit 3 - Declaration of Charles Clark.  Charles Clark's Declaration was addressed in

16  the Objections to the Evidence provided by Plaintiff regarding Defendant Dr. Moor.  Defendant

17  Objects to the Declaration on the grounds that it is irrelevant because Mr. Clark did not observe

18  the entire procedure.  As in the case above, the Court agrees.  It is unclear from the Declaration

19  whether Mr. Clark observed Plaintiff in pain prior to the first or second administration of

20  anesthetic, administration of which is supported by the evidence provided by Defendants.

21  Moreover, as Plaintiff's allegation concerning the anesthetic and sedation concerned Dr. Moor's

22  alleged deliberate indifference, it is irrelevant with respect to whether Defendant Ortiz was

23  deliberately indifferent.  Accordingly, the Declaration is inadmissible.  Fed.R.Evid. 402.

24      Exhibit 5 appears to be some sort of regulation.  Defendant objects to this Exhibit on the

25  grounds of authentication, foundation, hearsay and relevance.  The sections referenced by

26  Plaintiff in his Opposition concern medical definitions.  However, Plaintiff fails to make clear in

27  his Opposition what this document is or for what purpose it is submitted.  The Court finds the

28  Section concerning "Inmate copayment for Health Care Services" irrelevant to whether or not

Defendant Ortiz was deliberately indifferent for not making a doctor's appointment for Plaintiff. Moreover, Plaintiff fails to properly authenticate the document. Thus, the Court finds it is inadmissible. Fed.R.Evid. 402, 901.

Exhibit 6 - There is no Exhibit 6 on file with the Court. Thus, Exhibit 6 cannot be considered by the Court.

Exhibit 7 - Inmate Appeals. The Court finds these documents irrelevant to the Eighth Amendment claim at issue in this action. Accordingly, they are inadmissible and will not be considered by the Court. Fed.R.Evid. 402.

Exhibits 8, 10 - Discovery Responses from Different Action. Defendant objects to these Exhibits as irrelevant. In examining these Exhibits, it appears that they are responses from an action by Plaintiff against Defendant Danielson. Defendant Danielson was dismissed from this action on February 4, 2003. Plaintiff has not informed the Court as to why these documents are relevant to the Eighth Amendment claim against Defendant Ortiz. Accordingly, they are irrelevant and inadmissible. Fed.R.Evid. 402.

Exhibit 9 - Declaration of Robert Walters. Defendants Object to this Exhibit on the ground that is irrelevant. The Amended Complaint alleges that on August 1, 1996, Plaintiff's "Celly" informed guards that Plaintiff was in need of medical attention. (Am. Compl. at ¶ 35.) However, according to Plaintiff, Defendant Ortiz, the MTA on duty, did not provide Plaintiff with medical attention. Id. Plaintiff cites to Walter's Declaration as evidence that Defendant Ortiz was made aware of Plaintiff's condition. Defendant Walters states that he recalls calling the clinic on or about August 1, 1996, and informing Defendant Ortiz of Plaintiff's condition. (Walter's Decl. at ¶ 4.) The Court finds Walter's Declaration *is* probative of whether or not Defendant Ortiz knew of and disregarded a serious risk to his medical needs. Thus, it is admissible and will be considered by the Court.

Exhibit 11 - Responses to Interrogatories by Ruby Doser. Defendant Objects to this Exhibit as irrelevant. Plaintiff cites to this Exhibit to support his statement that Defendant Ortiz was informed of Plaintiff's condition on August 1, 1996. (Opposition at 6-7.) However, the interrogatory referenced asks Ruby Doser whether *she* had an emergency involving Plaintiff on

July 31, 1996.  (Exhibit 11 at 3, emphasis added.)  The response is "Yes."  Id.  The remaining answers, however, make no reference to Defendant Ortiz whatsoever, and Plaintiff does not make clear why this particular interrogatory is relevant to the deliberate indifference allegation against Defendant Ortiz.   Accordingly, Exhibit 11 is irrelevant and inadmissible.  Fed.R.Evid. 402.

Exhibit 12 - Responses by Defendant Doser to Plaintiff's Requests for Admissions. Defendant objects to this evidence as irrelevant on the basis that Admissions can only be used against the party making the admission.  However, Defendant cites to no authority that an admission by a co-defendant is inadmissible evidence against another co-defendant. Accordingly, the Court finds the evidence admissible where relied on in regard to Defendant Ortiz.

Exhibit 13 - Operational Procedure.  Defendant Objects to this Exhibit as irrelevant.  The document was created in the year 2000 where the events at issue concerning Defendant Ortiz took place in 1996.  The Court finds Defendant's objection valid and the exhibit inadmissible on relevancy grounds.  Fed.R.Evid. 402.

Declaration of Plaintiff - As noted above, Declarations must be based on personal knowledge, state facts as would be admissible in evidence (evidentiary facts, not conclusions) and show affirmatively that the affiant is competent to testify to the matters stated therein. Fed.R.Civ.P. 56.   As in the prior instance, Plaintiff makes conclusory statements on issues concerning his condition, diagnosis, prognosis, treatment and the applicable standard of care, all matters on which Plaintiff, who is not a medical expert, is qualified to testify.  Further, Plaintiffs conclusory statements that Defendant Ortiz  failed to treat him or provide adequate care will not be considered by the Court.  Such statements are not evidentiary facts but conclusions.

**Defendant Robert Walters, Correctional Officer**

Although Defendant filed a Reply Brief and Objections to Evidence Offered in Opposition to the Motion for Summary Judgment, no Opposition by Plaintiff is on file with the Court with regard to Defendant Walter's Motion for Summary Judgment.  Accordingly, the Court will not consider the Reply and Evidentiary Objections to documents that are not part of

the record.

**Defendant Ruby Doser, Correctional Officer**

Exhibit 1 - Operational Procedure No. 400.  Defendant objects to this evidence on the ground that it is irrelevant, lacks foundation, proper authentication and constitutes hearsay. Plaintiff cites to this Exhibit in support of his contention that Defendant Doser violated policy and procedure.   The operational procedure is dated June 2000, well after 1996, the date the events at issue in this case took place.  In addition, the evidence of a policy that may have been violated does not render the allegation that Defendant Doser was deliberately indifferent more or less probable.  Thus, the document is irrelevant.  Fed.R.Civ.P. 402.

Exhibit 2 - Institutional Appeal.  As in all of the above instances, Plaintiff fails to indicate the relevancy of this document to the Eighth Amendment claim at issue.  Defendant's objection is sustained.  Fed.R.Civ.P. 402.

Exhibits 3, 4, and 5 - Discovery Responses by Defendant Doser.  Plaintiff does not indicate why these documents are relevant to the resolution of the Eighth Amendment claim against the Defendant Doser. Plaintiff does not reference any one interrogatory, admission or document but instead cites to the entire package of Interrogatories, Requests for Admissions and Requests for Production of Documents.  While discovery responses by the Defendant may be relevant, Plaintiff must indicate which request supports his statement.  It may be that Plaintiff cites to the evidence for the proposition that Defendant Doser said she would call her supervisor. However, Defendant Doser states in her Declaration that she did contact her supervisor with regard to Plaintiff.  (Doser Decl. at ¶ 6.)   Other than this, the Court cannot glean why the entire discovery conducted aids in the resolution of the claim at issue in this case, nor is it the Court's responsibility to read the entire package and determine which facts support Plaintiff's contentions.  As Plaintiff provides no explanation as to how the documents are relevant to the claims against Defendant Doser, the Court finds the documents do not render the deliberate indifference claim more or less probable and they are therefore, irrelevant.  Fed.R.Civ.P. 402.

Exhibit 6 - Defendant Walters Declaration.  Defendant objects to this piece of evidence on the grounds of relevance, authentication, is unverified and lacks foundation.

Plaintiff cites to this document to support the proposition that Defendant Doser "intentionally and knowingly caused plaintiff to experience pain, suffering, injury or illness." (Opposition at 8.)  Plaintiff's statement, however, is a conclusion and is further unsupported by the documents cited to.  Plaintiff references certain pages to the exhibit that indicate that the MTA was contacted about Inmate Young by Defendant Walters.  However, whether Defendant Walters contacted the clinic is not evidence that makes more or less probable the fact that Defendant Doser was deliberately indifferent to Plaintiff's medical needs.   Accordingly, Defendant's Objection is sustained.  Fed.R.Evid. 402.

## E. UNDISPUTED FACTS[3]

### Defendant Dr. J.W. Moor

1. Defendant Dr. Moor has been a duly licensed medical doctor for 43 years.  For the last 13 years, he has been employed by the California Department of Corrections and was assigned to the California Correctional Institution ("CCI") in Tehachapi, California.

2. During his tenure at CCI, Defendant Dr. Moor provided medical care and treatment to Plaintiff on many occasions.[4]

3. The problems described by Plaintiff in his Amended Complaint pertaining to his abdomen and prior surgery were minor.[5]

4. Defendant Dr. Moor first examined Plaintiff on or about July 11, 1996, and believed one of the sutures had become infected.  The infection was minor and draining.  Thus, Defendant scheduled Plaintiff for surgery a few days later, on July

---

[3]The following facts are undisputed solely for the purposes of this Motion.

[4]Although Plaintiff disputes this fact, he concedes throughout his pleadings that when he presented to the clinic for treatment on July 11, 1996, July 16, 1996, March 24, 1997, August 26, 1997, October 27, 1997, April 17, 1998, August 14, 1998, and March 18, 1999, he was seen by Dr. Moor.  Plaintiff's contentions in this action concern the adequacy of the treatment provided.  Thus, this fact is undisputed.

[5]Plaintiff again disputes this fact in his Declaration and he contends that the surgical removal of the sutures was not "minor" as Dr. Moor indicates in his Declaration. However, Plaintiff is not a medical doctor and therefore, is not competent to testify to the seriousness or risks of any surgical procedure nor does he provide other evidence to dispute this fact.  See, Fed.R.Evid.701, 702.  Thus, this part of the Declaration is inadmissible and the fact is undisputed.

16, 1996, to have the infected suture removed.

5.    On July 16, 1996, Defendant Moor performed a surgical procedure to remove the infected suture.   Prior to the surgery, Defendant Dr. Moor injected Plaintiff with Xylocaine, an anesthetic.   Defendant again injected Plaintiff with Xylocaine when Plaintiff complained of discomfort from the initiation of the necessary incision.[6]

6.    At no time did Defendant Dr. Moor refuse to examine or provide medical care and treatment to Plaintiff.[7]

**Defendant Manuel Ortiz**

7.    At all relevant times, Defendant Ortiz was employed by the California Department of Corrections as a Medical Technical Assistant and was assigned to the California Correctional Institution in Tehachapi, California.

8.    During his tenure at CCI, Defendant Ortiz provided medical care and treatment to Plaintiff on many occasions.[8]

9.    On or about July 16, 1996, Defendant Moor performed a minor surgical procedure to remove an old suture from Mr. Young's abdomen.  Defendant Ortiz witnessed Dr. Moor injecting Plaintiff with Xylocaine, a local anesthetic, at least twice.  The injections were documented in Plaintiff's medical file.[9]

10.   On or about July 31, 1996, Defendant Ortiz examined Plaintiff during sick call. Defendant Ortiz concluded that Plaintiff's condition was not an emergency and advised Plaintiff that he needed to submit a request to see the doctor as soon as

---

[6]Plaintiff disputes this fact contending that Dr. Moor only injected Plaintiff prior to the surgery.  However, Plaintiff does not allege that he was not injected more than once and the fact, as stated, does not indicate when the second injection occurred.  Thus, the statement is undisputed.

[7]Again, although Plaintiff "disputes" this fact in his Declaration, he also concedes that Dr. Moor examined him each time he presented to the medical clinic with pain. Plaintiff's dispute is to the adequacy of the treatment provided by Dr. Moor.  This fact is therefore, undisputed.

[8]Plaintiff disputes this fact, however, he does not deny that he was examined by Defendant Ortiz, he disputes the adequacy of the care provided.  Thus, this fact is undisputed.

[9]See supra Note 6.

1    possible.[10]

2    11.    Defendant Ortiz did not schedule doctor appointments nor did he issue "ducats"

3    for inmates to obtain medical care.  CDC policies and procedures required

4    Plaintiff to submit a written request for medical care in order to schedule an

5    appointment.[11]

6    12.    Defendant Ortiz does not recall being advised by anyone on August 1, 1996, that

7    Plaintiff was in need of emergency medical care.  Defendant Ortiz had examined

8    Plaintiff only a few hours earlier and had determined that no emergency existed

9    and Plaintiff needed to submit a proper request for health care in order to schedule

10    an appointment with the doctor.

11    13.    At all times Defendant Ortiz treated Plaintiff with dignity and respect in an honest

12    effort to provide him with medical care and treatment.[12]

13    14.    At no time did Defendant Ortiz ever refuse to examine Plaintiff or provide him

14    treatment.[13]

15    **Defendant Robert Walters, Correctional Officer[14]**

16    15.    At all relevant times, Defendant Walters was employed by the California

17    _____

18    [10]Plaintiff does not dispute the facts as stated, he disputes the diagnosis.  Accordingly, the fact is
undisputed.

19
20    [11]Although Plaintiff states that he "denies" this fact, his Declaration does not contradict the facts stated.
Further, the document referenced, the Inmate Co-Payment for Health Services, was deemed inadmissible and further
does not constitute evidence to create a disputed fact.  See, pg. 11 (Exh. 5.)  Accordingly, the fact is undisputed.

21
22    [12]Plaintiff disputes this fact.  However, other than his statement that he disputes it, he fails to allege facts to
the contrary. Moreover, whether Defendant treated Plaintiff with respect is irrelevant to the 8th Amendment claim at
issue.

23
24    [13]Again, Plaintiff's dispute is with the adequacy of the treatment provided.  He does not allege that
Defendant refused to provide him with medical treatment but alleges that more should have been done.  Thus, the
fact is undisputed.

25
26    [14]Plaintiff did not file an Opposition to Defendant Walter's Motion for Summary Judgment and thus, did not
set forth a separate Statement of Undisputed Facts. Local Rule 56-260(b).  Verified complaints and oppositions
constitute opposing affidavits for purposes of the summary judgment rule if they are based on facts within the
pleader's personal knowledge. Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998). Because plaintiff
27    neither submitted his own statement of disputed facts nor addressed defendants' statement of undisputed facts, the
Court accepts defendants' version of the facts where Plaintiff's Verified Complaint and Opposition are not
28    contradictory.

Department of Corrections as a Correctional Officer and was assigned to the
California Correctional Institution in Tehachapi, California.  (Walters Decl. ¶2.)

16.   Defendant Walters is not a medical doctor nor does he have any medical training.
His job duties did not, and do not, include providing any type of medical
consultation, care or treatment to inmates.  (Walters Decl., ¶3.)

17.   On or about August 1, 1996, Plaintiff's cellmate advised Defendant Walters that
Plaintiff was not feeling well.  The cellmate did not tell Defendant Walters that
there was an emergency nor did he say that Plaintiff needed medical assistance.[15]
(Walters Decl., ¶4.)

18.   Rather, the cellmate told Defendant Walters that Plaintiff wanted it noted on the
log that he was not feeling well.  Defendant Walters noted Plaintiff's illness on
the log as requested.  (Walters Decl., ¶ 4)

19.   Even though he was not asked to do so, Defendant Walters also called the medical
clinic and informed the MTA of Plaintiff's condition.  The MTA advised
Defendant Walters that he was very busy at the moment but that he would come to
examine Plaintiff as soon as possible.  (Walters Decl., ¶ 4.)

20.   The MTA arrived and examined Plaintiff prior to the end of Defendant Walter's
shift.  (Walters Decl., ¶4.)

21.   At no time was Defendant Walters advised or aware that Plaintiff was in need of
emergency medical care.  (Walters Decl., ¶5.)

22.   At no time was Defendant Walters asked to summon medical care for Plaintiff.
(Walters Decl., ¶5.)

**Defendant Ruby Doser, Correctional Officer[16]**

23.   At all relevant times, Defendant Doser was employed by the California

_____

[15]Although Plaintiff alleges in the Amended Complaint that Defendant Walters was informed there was a "man down," Plaintiff concedes this is what his "Celly" allegedly told Defendant Walters.  Plaintiff does not allege he was a party to the conversation between his Celly and Defendant Walters and thus, the comment is inadmissible hearsay and does not create a disputed issue of fact. Fed.R.Evid. 801(c).

[16]Defendant Doser is referred to in the Complaint by her maiden name of "Sledge." (Doser Decl. at ¶ 1.)

18

1    Department of Corrections as a Correctional Officer and was assigned to the

2    California Correctional Institution at Tehachapi.

3    24.    Defendant Doser is not a medical doctor nor does she have any medical training.

4           Her job duties did not, and do not, include providing any type of medical

5           consultation, care or treatment to inmates.[17]

6    25.    On or about August 1, 1996, either Mr. Young or his cellmate advised Defendant

7           Doser that Plaintiff was not feeling well.[18]

8    26.    Defendant Doser noted Plaintiff's illness on the log.

9    27.    Defendant Doser also called the medical clinic to advise them of Plaintiff's

10          condition and requested that they send someone over to examine Plaintiff.[19]

11   28.    Later, when Plaintiff complained again, Defendant Doser advised her supervisor

12          of the situation and informed him of her efforts to get medical personnel to

13          examine Plaintiff.[20]

14   **F.  STANDARD OF REVIEW**

15         A prisoner's claim of inadequate medical care does not constitute cruel and unusual

16   punishment unless the mistreatment rises to the level of "deliberate indifference to serious

17   medical needs."  Estelle v. Gamble, 429 U.S. 97, 106 (1976).  The "deliberate indifference"

18   standard involves an objective and a subjective prong.  First, the alleged deprivation must be, in

19   objective terms, "sufficiently serious."  Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing

20   Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  Second, the prison official must act with a

21   "sufficiently culpable state of mind," which entails more than mere negligence, but less than

22

23         [17]Although Plaintiff denies this fact, his references to Operational Procedure does not establish facts to the
24   contrary and was deemed inadmissible evidence.  See, supra pgs 13-14 ("Exhibit 1").  Thus, the fact is undisputed.

25         [18]Plaintiff denies this fact, however, the documents cited do not state facts to the contrary and were deemed
     inadmissible by the Court. See, supra pg. 14 ("Exhibit 2" - Institutional Appeal.) Thus, the fact is undisputed.

26         [19]Although Plaintiff disputes this fact, his Declaration provides only that Defendant Doser said she would
27   do these things.  Nothing in the Declaration or other evidence provided by Plaintiff contradicts these facts such that
     they are disputed.

28         [20]See, Supra, Note 18.

19

1    conduct undertaken for the very purpose of causing harm.  Farmer v. Brennan, 511 U.S. at 837.

2    A prison official does not act in a deliberately indifferent manner unless the official "knows of

3    and disregards an excessive risk to inmate health or safety."  Id.

4        In applying this standard, the Ninth Circuit has held that before it can be said that a

5    prisoner's civil rights have been abridged, "the indifference to his medical needs must be

6    substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this

7    cause of action."  Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980), citing

8    Estelle, 429 U.S. at 105-06.   Deliberate indifference is "a state of mind more blameworthy than

9    negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or

10   safety.'"  Farmer v. Brennan, 511 U.S. 825, 835 (1994) (quoting Whitley, 475 U.S. at 319).  "[A]

11   complaint that a physician has been negligent in diagnosing or treating a medical condition does

12   not state a valid claim of medical mistreatment under the Eighth Amendment.   Medical

13   malpractice does not become a constitutional violation merely because the victim is a prisoner."

14   Estelle v. Gamble, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316

15   (9th Cir. 1995); McGuckin v. Smith, 974 F.2d 1050, 1050 (9th Cir. 1992), overruled on other

16   grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  Even

17   gross negligence is insufficient to establish deliberate indifference to serious medical needs.  See

18   Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

19       Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S.

20   at 104-05.  However, to establish a claim of deliberate indifference arising from delay, a plaintiff

21   must show that the delay was harmful.  See Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir.1994)

22   (per curiam); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th

23   Cir.1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir.1989); Shapley v. Nevada Bd. of

24   State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir.1985) (per curiam).  Mere differences of

25   opinion between a prisoner and prison medical staff as to proper medical care do not give rise to

26   a § 1983 claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir.1996); Sanchez v. Vild, 891

27   F.2d 240, 242 (9th Cir.1989); Franklin v. Oregon, 662 F.2d 1337, 1334 (9th Cir.1981).

28   **G. ANALYSIS**

**Defendant Dr. J.W. Moor**

Prior to Plaintiff's arrival at CCI, Plaintiff had undergone a colostomy surgery.  Sutures had been sewn into Plaintiff's abdominal wall to close an incision that was made through the abdomen.  (Moor Decl. ¶3a; Am. Compl. at ¶3.)

On July 11, 1996, Defendant Dr. Moor first examined Plaintiff.  (Undisputed Fact ["UF"] No. 4.)  Defendant noted that an apparent suture sinus tract had developed and was draining pus.  (Moor. Decl. ¶3b.)  Defendant concluded that one of Plaintiff's old sutures had become infected and should be removed.  However, as the infection was minor and was draining, Defendant Dr. Moor concluded that the infection was not an emergency requiring immediate action or antibiotics.  Defendant scheduled Plaintiff for an in-house surgery a few days later.  Id.

The Court finds that Defendant has met his initial burden of informing the Court of the basis for the motion, and identifying those portions of the record which he believes demonstrates the absence of a genuine issue of material fact concerning the Eighth Amendment claim on July 11, 1996.  The burden therefore shifts to Plaintiff to establish that a genuine issue as to any material fact actually does exist.  See  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In his Opposition, Plaintiff makes only conclusory statements that Dr. Moor failed to treat him on July 11, 1996, by not providing antibiotics for his infection.  (Opposition at 4.)  However, Plaintiff presents no evidence that antibiotics were necessary.  In attempting to establish the existence of a factual dispute, Plaintiff may not rely upon the mere allegations or denials in his pleading, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).   Here, the evidence before the Court is that although one of Plaintiff's sutures appeared to be infected, the infection was minor and was draining.  (Moor Decl., ¶3b.)  Thus, Defendant Moor concluded that there was no need for antibiotics.  Id.  Plaintiff offers only his opinion that antibiotics were necessary.   However, Plaintiff is not a medical doctor and is not qualified to testify as to the diagnosis or what treatment was necessary.  Plaintiff merely

concludes that something more than what was done should have been done; however, this is a

disagreement with the diagnosis made by Defendant Dr. Moor.  Differences in judgment between

an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment

are insufficient to establish a deliberate indifference claim.  See Sanchez v. Vild, 891 F.2d 240,

242 (9th Cir.1989).   Accordingly, Plaintiff fails to meet his burden in establishing a genuine

issue of material fact, and judgment as a matter of law is warranted on the July 11, 1996, Eighth

Amendment claim.

The undisputed evidence shows that Defendant Dr. Moor performed surgery on Plaintiff

on July 16, 1996, to remove the infected sutures.  (UF #5.)   Plaintiff contends that Defendant

was deliberately indifferent because he failed to anesthetize or sedate him.  (Am. Compl. at ¶30.)

Defendant provides evidence that the removal of surgical sutures is minor and, thus, it is

customary to remove the sutures under a local anesthetic.  (Moor Decl., ¶ 3c.)   Prior to the

surgery, Defendant Moor injected Plaintiff with Xylocaine, an anesthetic injected cutaneous and

subcutaneous peripheral to the sinus tract.  (Moor Decl. ¶3(c); Ortiz Decl. ¶4; Plaintiff's

Opposition at ¶ C.)   Plaintiff complained of continued discomfort from the initiation of the

surgery and, thus, Defendant Dr. Moor gave him a second injection of Xylocaine. (Moor Decl.

¶3(c); Ortiz Decl. ¶4.)

The Court finds that Defendant has met his initial burden of informing the Court of the

basis for their motion.  The burden therefore shifts to Plaintiff to establish that a genuine issue as

to any material fact actually does exist.  See  Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

475 U.S. 574, 586 (1986).

In his Opposition, Plaintiff concedes that Defendant injected Plaintiff with Xylocaine

prior to the surgery, thereby contradicting the allegation in his Amended Complaint that

Defendant "did not numb him." (Am. Compl. at 8.)  Although Plaintiff contends he was not

given any anesthetic during the course of surgery, he does not offer evidence that more than 2

injections was necessary.   Thus, there exists no genuine issue of material fact with respect to this

allegation.

With respect to Plaintiff's contention that Dr. Moor did not "sedate" him, Defendant has

provided evidence that the removal of surgical sutures was minor and required only a local anesthetic. (Moor Decl. at ¶3c.) Plaintiff provides no evidence to support a finding that sedation was necessary. Accordingly, judgment as a matter of law is warranted on these allegations.

Defendants next provide evidence that Plaintiff returned to the Clinic on March 24, 1997, complaining of abdominal pain. (Moor Decl. at ¶ 3d.) Defendant examined Plaintiff, found no objective evidence of pain, swelling, fever or infection. However, Plaintiff wanted to have all the remaining deep sutures removed. Id. Defendant provides evidence that the reasonable, necessary and customary practice is to leave the sutures in unless they become infected or cause some other significant problem. Id. Plaintiff was examined by Defendant again on August 26, 1997, October 27, 1997, April 17, 1998, August 14, 1998, and March 18, 1999. (Moor Decl., ¶ 3(e).) Each time, Plaintiff complained of abdominal pain and each time, Defendant found no objective signs of pain, inflamation, fever or infection. Id. Despite Plaintiff's requests for additional surgery to remove the sutures, Defendant declined, indicating that the practice was to leave the sutures in unless they became infected. Id.

In his Opposition, Plaintiff states that each time he saw Defendant and requested that the sutures be removed, Defendant refused to remove them, informing him that he would not remove them unless they became infected. (Opposition at 5-7.) Plaintiff concludes that Defendant was deliberately indifferent because he did not do as Plaintiff asked. However, again mere differences of opinion between a prisoner and prison medical staff as to proper medical care do not give rise to a § 1983 claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir.1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir.1989); Franklin v. Oregon, 662 F.2d 1337, 1334 (9th Cir.1981).

In addition, while Plaintiff is qualified to testify to the fact that he experienced pain, Plaintiff must present evidence that Defendant knew of and disregarded a serious medical need.

The Ninth Circuit has defined a "serious medical need" in the following ways: failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain; ... [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that

significantly affects an individual's daily activities; or the existence of chronic and substantial pain. McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir.1992), *overruled on other grounds*, WMX Technologies, Inc. v. Miller, 104 F.3d 1133 (9th Cir.1997).  In addition, Plaintiff must present evidence that Defendant was deliberately indifferent to that need.

Deliberate indifference exists when an official knows of and disregards a serious medical condition or when an official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and actually draws such an inference.  Farmer v. Brennan, 511 U.S. 825, 838 (1994).  Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. See Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir.1989).

In this case, contrary to Plaintiff's assertions, Defendant Dr. Moor examined Plaintiff each time he presented to the medical clinic.  (Moor Decl. at ¶ 3.)  Defendant medically concluded that Plaintiff's sutures were not infected and thus, removal was unnecessary. Although Plaintiff states he experienced pain, he provides no evidence that his condition constituted a "serious medical need."  As noted by Defendant, Plaintiff had undergone a colostomy surgery.  Thus, it is expected that an individual will experience some pain during recovery.  However, there is no evidence that Plaintiff's complaints of pain medically required removal of the sutures or that Defendant's refusal to remove the sutures at Plaintiff's request constituted deliberate indifference.  Based on the foregoing, the Court concludes that Plaintiff has failed to meet his burden of establishing a genuine issue of material fact warranting trial on any of his Eighth Amendment allegations against Defendant Dr. Moor.  Accordingly, the Court will RECOMMEND that summary judgment in favor of Dr. Moor be GRANTED.

**Defendant Manuel Ortiz, MTA**

Plaintiff alleges that he visited sick call complaining of abdominal and head pain on July 31, 1996, and was seen by MTA Ortiz but was not seen by a medical doctor and was not issued a ducat for followup with a doctor.  (Am. Compl. at 9.)  Based on this, Plaintiff alleges that MTA Ortiz was deliberately indifferent to his medical needs.

Defendant Ortiz presents evidence that on July 31, 1996, during sick call, Plaintiff

1  complained of a stomachache and other minor problems.  (Ortiz Decl., at ¶ 5.)  Defendant

2  concluded that Plaintiff's condition was not an emergency and that he would need to complete a

3  request to see the doctor when the doctor was available.  Id.  Defendant does not make

4  appointments for doctors nor does he issue "ducats" for medical care. Id.

5      Plaintiff argues that Defendant Ortiz failed to inform  him he needed to submit a request

6  to see a doctor but also concedes in his Opposition and Declaration that Defendant Ortiz told him

7  to follow up with a doctor. (Opposition at 10; Plaintiff's Decl. at ¶ 6.)  Plaintiff further concedes

8  that he attended sick call on July 31, 1996, complaining of head and abdominal pain and was

9  examined by Defendant Ortiz.  (Opposition at 5.)   The evidence before the Court shows that

10  Defendant Ortiz medically concluded that Plaintiff's condition was not serious and that Plaintiff

11  would need to submit a request to see a physician should he want to be examined by a Doctor.

12  (Ortiz Decl. at ¶5.)   Plaintiff provides no evidence, however, that his condition was sufficiently

13  serious and required something beyond the medical diagnosis made by Defendant Ortiz.  That

14  Plaintiff felt he needed to be examined by a doctor rather than an MTA is a disagreement in

15  diagnosis and is insufficient to state a claim of deliberate indifference.  Sanchez v. Vild, 891

16  F.2d 240, 242 (9th Cir.1989).  Accordingly, the Court finds Defendant Ortiz is entitled to

17  judgement as a matter of law on the deliberate indifference claim arising on July 31, 1996.

18      Plaintiff next contends that Defendant Ortiz was deliberately indifferent for not

19  responding to his cell on August 1, 1996, when Defendant Walters called the clinic and informed

20  them that Plaintiff was ill.  Plaintiff alleges that Defendant Ortiz was deliberately indifferent

21  because, although he had "examined Plaintiff a few hours earlier on July 31, 1996 . ."

22  (Opposition at 11) it took him "four and a half, five hours . . . to give Plaintiff emergency

23  medical care" on August 1, 1996.  (Am. Compl. at 10; Opposition at 11; Plaintiff's Declaration

24  at ¶ 7.)   Defendant produces evidence that he does not recall ever being informed that Plaintiff

25  needed emergency medical care.  (Ortiz Decl. at ¶6.)   Moreover, the evidence shows that

26  Defendant Walters, whom Plaintiff alleges informed Defendant Ortiz of the alleged

27  "emergency," states that he advised Defendant Ortiz simply that Plaintiff was ill.  (Walters Decl.

28  at ¶ 4.)  Defendant Walters states that Plaintiff's "Celly" wanted it noted on the record that

1 Plaintiff was not feeling well and, without being required to do so, contacted the clinic. Id; UF

2 #s 18, 19.   In addition, Defendant Ortiz had examined Plaintiff only a few hours earlier and

3 determined that Plaintiff's symptoms were minor and there was no emergency. (Ortiz Decl. at ¶

4 6.)

5 　　　Again, although Plaintiff alleges that he needed "emergency medical attention," he

6 provides no evidence that his condition was sufficiently serious such that Defendant Ortiz's

7 failure to examine him immediately upon notification constituted deliberate indifference.

8 Although Plaintiff cites to Defendant Doser's requests for admissions wherein Defendant Doser

9 responded "yes" to Plaintiff's question whether Defendant Doser had a "medical emergency

10 involving Plaintiff on July 31, 1996," such evidence is insufficient to support a finding that

11 Defendant Ortiz was deliberately indifferent.  (Exh. 12, Opposition.)   The question posed to

12 Defendant Doser was whether an emergency existed on July 31, 1996, whereas the claim at issue

13 here concerns Defendant Ortiz's knowledge on August 1, 1996.   In addition, Defendant Doser is

14 not qualified to render a medical opinion as to Plaintiff's condition on July 31, 1996.  Defendant

15 Doser's interpretation that Plaintiff was ill and such illness might have constituted a medical

16 emergency does not support Plaintiff's claim of deliberate indifference against Defendant Ortiz

17 because Defendant Ortiz *did* examine Plaintiff on July 31, 1996, and concluded that Plaintiff's

18 condition *was not* a medical emergency.  (Ortiz Decl. at ¶5.)

19 　　　Moreover, with regard to the August 1, 1996 claim, Plaintiff concedes that Defendant

20 Ortiz had examined him only hours earlier and complains that the delay of four and a half to five

21 hours for treatment constituted deliberate indifference.  However, where a prisoner is alleging a

22 delay in receiving medical treatment, the delay must have led to further harm in order for the

23 prisoner to make a claim of deliberate  indifference to serious medical needs.  McGuckin v.

24 Smith, 974 F.2d 1050, 1059 (9th Cir. 1992) (*citing* Shapely v. Nevada Bd. of State Prison

25 Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).  Here, Plaintiff provides no evidence that

26 Defendant Ortiz knew of and disregarded a serious risk to his medical condition nor does he

27 demonstrate, let alone allege, any harm resulting from the delay.  To the extent Plaintiff relies on

28 the fact that he later incurred an infection and was diagnosed with having a "Spigelian Hernia

and Granulated [S]utures" as a result of the aforementioned incidents,  Plaintiff makes no such

allegation in the Complaint nor does he provide any evidence that these occurrences were a result

of the "four and a half, to five hour delay" between July 31, 1996, when Defendant Ortiz

examined him, and August 1, 1996.   Accordingly, the Court finds Defendant Ortiz is entitled to

summary judgment on Plaintiff's Eighth Amendment claim and will RECOMMEND that the

Motion for Summary Judgment be GRANTED.

**Defendant Robert Walters, Correctional Officer**

Plaintiff alleges that on or about August 1, 1996, Defendant Walters was deliberately

indifferent to his medical need because he was informed Plaintiff needed medical care and failed

to provide it.  Plaintiff further complains that the four to five hour delay of getting that medical

attention was inexcusable.  (Am. Compl at 10, 19.)

It is undisputed that on or about August 1, 1996, Defendant Walters was advised by

Plaintiff's cellmate that Plaintiff was not feeling well.  (UF # 17.)  Defendant was not informed

that Plaintiff needed medical assistance but rather that Plaintiff wanted it noted on the log that he

was not feeling well.  (UF # 18.)   Defendant noted Plaintiff's illness on the log and also phoned

the medical clinic and informed the MTA on duty, Defendant Ortiz, that Plaintiff was not feeling

well.  (UF # 18, 19.)  Defendant was informed that the clinic was extremely busy but that the

MTA would respond as soon as possible and did so before the end of the shift.  (UF #19.)

Defendant also informed Plaintiff's cellmate that Plaintiff should let the floor officer know he

was not feeling well.   Plaintiff was not present during Defendant's conversation with Plaintiff's

cellmate.  (Walters Decl. at ¶4.)

Plaintiff did not file an Opposition to the Motion for Summary Judgment and thus,

neither admitted or denied the facts set forth by defendants as undisputed nor filed a separate

statement of disputed facts.  Local Rule 56-260(b).  A verified complaint in a pro se civil rights

action may constitute an opposing affidavit for purposes of the summary judgment rule, where

the complaint is based on an inmate's personal knowledge of admissible evidence, and not

merely on the inmate's belief.  McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987) (per

curium); Lew v. Kona Hospital, 754 F.2d 1420, 1423 (9th Cir. 1985); F.R.C.P. 56(e).

1   The Amended Complaint, which constitutes the opposing affidavit, provides that

2   Plaintiff's "Celly" informed the tower C/O Walters that he had become extremely sick and had a

3   "man down."  Plaintiff offers this statement as evidence that Defendant Walters knew Plaintiff

4   was "extremely sick" and disregarded that fact.   However, a statement offered to prove the truth

5   of the matter asserted and made by a declarant other then the one testifying constitutes

6   inadmissible hearsay. Fed.R.Evid. 802.  The statement offered by Plaintiff, that his "Celly" told

7   Walters he was "extremely sick" and had a "man down" is offered to prove that Defendant

8   Walters knew of and disregarded a Plaintiff's serious medical need.  Thus, the statement is

9   hearsay and is inadmissible to create a disputed issue of fact.  Fed.R.Evid.802.

10   Even were the Court to assume the statement was admissible, Plaintiff presents no

11   evidence nor is there any in the record that Plaintiff's medical need was "serious." McGuckin v.

12   Smith, 974 F.2d 1050, 1059 (9th Cir.1991)(quoting Estelle, 429 U.S. at 104).  As noted above,

13   Defendant Ortiz examined Plaintiff hours before and concluded that there was no medical

14   emergency.  (UF # 18.)  Accordingly, the Court will RECOMMEND that summary judgment be

15   GRANTED with regard to Plaintiff's Eighth Amendment allegation against Defendant Walters.

16   **Defendant Ruby Doser, Correctional Officer**

17   Plaintiff alleges that on August 1, 1996, his cellmate informed Defendant Doser that "[he]

18   was extremely sick (I was laying on the floor this time.)" (Am. Compl. at 9.)  According to the

19   Amended Complaint, Defendant Doser said she would call the MTA.  During two counts at 7:00

20   p.m. and 9:00 p.m., Plaintiff alleges that Defendant Doser was again informed by his cellmate

21   that he needed medical attention when she responded that she would call her supervisor and see

22   about getting the MTA over as soon as possible.  However, Plaintiff did not receive attention

23   until four to five hours later.  Id. at 10.  Thus, Plaintiff alleges Defendant Doser was deliberately

24   indifferent.

25   Defendant provides evidence that on August 1, 1996, Defendant was either informed by

26   Plaintiff or his cellmate that Plaintiff was in his cell and not feeling well.  (Doser Decl. at ¶ 3; UF

27   # 25.)  Defendant Doser noted the illness on the log and also called the IV-B medical clinic and

28   advised them of Plaintiff's situation.  (Doser Decl. at ¶4.)  Later, when Plaintiff complained

again, Defendant Doser advised her supervisor and again contacted the clinic to see about

sending someone over to examine Plaintiff.  (Doser Decl. at ¶ 5.)

In his Opposition to the Motion for Summary Judgment, Plaintiff argues that Defendant

Doser is trained how to obtain emergency medical care when an inmate becomes ill.  In support

of this, Plaintiff points to internal policy and procedure which the Court has deemed

inadmissible. See, supra pg 13 (addressing Exhibit 1.)   Even were the document admissible, a

violation of an internal policy alone is insufficient evidence to show that Defendant knew of and

disregarded Plaintiff's serious medical condition.  Other than his reference to an inadmissible

exhibit, Plaintiff's opposition proffers only conclusory statements and inadmissible hearsay[21] that

Defendant Doser was deliberately indifferent and intentionally caused Plaintiff pain and

suffering.  As indicated above, in attempting to establish the existence of a factual dispute,

Plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to

tender evidence of specific facts in the form of affidavits, and/or admissible discovery material,

in support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11;

First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).   Here,

Plaintiff presents no evidence, admissible or otherwise, that creates a genuine issue of fact that

Defendant Doser knew of and disregarded a significant risk to Plaintiff's health.   Defendant

Doser, however, provides evidence that she was informed by either Plaintiff or his cellmate that

he was not feeling well.  (Doser Decl. at ¶ 4.)  Plaintiff does not rebut this with evidence that his

medical need was substantial and that Defendant Doser knew and disregarded that fact.

With respect to the allegation that Defendant Doser was deliberately indifferent for the

delay in medical treatment between July 31, 1996, and August 1, 1996, Plaintiff offers no

evidence that such a delay caused him further harm. McGuckin v. Smith, 974 F.2d 1050, 1059

(9th Cir. 1992) (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th

Cir. 1985)).   While Plaintiff may have been later diagnosed with a hernia, granulated sutures and

an infection, he provides no evidence that any of these circumstances was caused by the delay.

---

[21]Plaintiff states his cellmate told Defendant Doser Plaintiff had a medical emergency.  (Am. Compl. at 9.)

Even were that the case, Plaintiff has provided no evidence that his condition was serious and that Defendant Doser knew and disregarded that fact.   Accordingly, the Court finds Plaintiff has failed to meet his burden in creating a genuine fact concerning whether Defendant Doser knew of and disregarded a serious risk to his health.  As such, the Court will RECOMMEND that the Motion for Summary Judgment on the Eighth Amendment claim against Defendant Doser be GRANTED.

**H.  CONCLUSION AND RECOMMENDATION**

The Court HEREBY RECOMMENDS that the Eighth Amendment deliberate indifference claim against Defendants Moor, Ortiz, Walters and Doser be GRANTED and the case DISMISSED.

The Court further ORDERS that these Findings and Recommendations be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within THIRTY (30) days after being served with a copy of these Findings and Recommendations, any party may file written Objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the Objections shall be served and filed within TEN (10) court days (plus three days if served by mail) after service of the Objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file Objections within the specified time may waive the right to appeal the Order of the District Court. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:  November 28, 2005**          **/s/ Sandra M. Snyder**
icido3                                  UNITED STATES MAGISTRATE JUDGE